UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JDS TECHNOLOGIES, INC.,
a Michigan corporation,

    Plaintiff.

Case No. 15-10385

AVIGILON USA CORPORATION,
a Delaware corporation and AVIGILON
CORPORATION, a Canadian corporation,

HON. AVERN COHN

    Defendants.
_____/

**MEMORANDUM AND ORDER ADOPTING SUPPLEMENTAL REPORT AND RECOMMENDATION OF SPECIAL MASTER ON CLAIM CONSTRUCTION (Doc. 73)**

I. Introduction

This is a patent case. JDS Technologies, Inc. (JDS) is suing Avigilon USA Corporation and Avigilon Corporation (collectively "Avigilon") claiming infringement of two patents: U.S. Patent Nos. 6,891,566 ("the '566 patent") and 8,185,964 ("the '964 patent") (collectively, "the JDS patents").[1] The patents share an identical specification and are both entitled "Digital Video System Using Networked Cameras." JDS designated six paradigm claims and originally seventeen (17) words or phrases were at issue. Due to the complexity of the subject matter, the Court referred the Markman proceedings to a Special Master. (Doc. 57). The Special Master rendered a report and recommendation (Initial R&R). (Doc. 59). Avigilon objected. See Doc. 60, 61. In part because Avigilon advanced new claim constructions not considered by the Special Master in its objections and because in other instances Avigilon agreed with the Special Master's construction, the Court referred the matter to the Special Master for a supplemental report and recommendation. (Doc. 69). The Special Master has rendered a supplemental report and recommendation (Supp. R&R) on what were twelve (12) remaining disputed words and phrases (Doc. 73). JDS has not objected to the Supp. R&R. Avigilon has objected to the Supp. R&R and JDS has responded. See Docs. 74 and 76. There are now seven (7) disputed words and phrases. As will be explained, having reviewed the voluminous record, the Court is satisfied that the Special Master's recommendations are correct. Accordingly, the Supp. R&R will be adopted. A

---

[1] JDS also sued Exacq Technologies claiming infringement of the same patents which is pending before the undersigned. See Case No. 15-10387. This decision addresses only Avigilon's objections to claim construction.

chart displaying the disputed words and phrases, the proposed constructions, and the Special Master's supplemental construction/Court's construction is attached as Exhibit A.

## II. The Papers

As noted in the Supp. R&R, the briefing on claim construction has been extensive. In addition to the briefs, the Special Master rendered two report and recommendations, each over eighty (80) pages. There is no need to list all of the filings here. Suffice it to say that there has been no shortage of pages devoted to the issues which have all been fully, if not repeatedly, fleshed out.

## III. Legal Standards

### A.

Fed. R. Civ. P. 53 states the appropriate standard of review for a district court in reviewing findings of fact and conclusions of law made or recommended by a Special Master. Rule 53(f)(3) provides as follows:

> Reviewing Factual Findings. The court must decide de novo all objections to findings of fact made or recommended by a master, unless the parties, with the court's approval, stipulate that:
> (A) the findings will be reviewed for clear error; or
> (B) the findings of a master appointed under Rule 53(a)(1)(A) or (C) will be final.

Fed. R. Civ. P. 53(f)(4) provides as follows:

> Reviewing Legal Conclusions. The court must decide de novo all objections to conclusions of law made or recommended by a master.

See also Hochstein v. Microsoft Corp., 730 F. Supp. 2d 714, 717 (E.D. Mich. 2010), aff'd 430 F. App'x 898 (Fed. Cir. 2011) ("The Court reviews de novo factual findings and legal conclusions of the Special Master to which a specific objection has been made.

3

See Fed. R. Civ. P. 53(f)). The Court may "adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions." Fed. R. Civ. P. 53(f)(1).

B.

The Special Master set forth the relevant law on claim construction which will not be repeated here. Briefly, claim construction is a matter of law for the Court. Markman v. Westview Instruments. Inc., 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996). The focus is on "what one of ordinary skill in the art at the time of the invention would have understood the term to mean." Id. at 986. The Court of Appeals for the Federal Circuit has stated: "Claim terms generally are construed in accordance with the ordinary and customary meaning they would have to one of ordinary skill in the art in light of the specification and the prosecution history." Aventis Pharma S.A. v. Hospira, Inc., 675 F.3d 1324, 1329 (Fed. Cir. Apr. 9, 2012) (citing Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc)).

III. Observations

The Court is constrained to make some observations about Avigilon's objections. First, the objections do not comply with the local rules for type size.[2] In reviewing prior briefs, it is not clear whether Avigilon has ever complied with the type size requirements but Avigilon's objections to the Supp. R&R in particular are presented in a noticeably small print. Given that the Court has not limited the page length for any of the briefing - Avigilon's objections to the Supp. R&R run 25 pages for example - it makes little sense

---

[2]E.D. Mich. LR 5.1(A)(3) provides:
Type Size. Except for standard preprinted forms that are in general use, type size of all text and footnotes must be no smaller than 10½ characters per inch (non proportional) or 14 point (proportional).

4

to file papers which are not in compliance with the local rules.  Second, the first eleven pages of Avigilon's objections contain an "introduction" and "background" section which is in large measure an invalidity argument which was raised in a prior motion to dismiss by Exacq, in which Avigilon did not join, and which the Court denied.  Avigilon also rather boldly suggests that if the Court adopts two of the Special Master's proposed constructions, the Court should have a status conference to set a schedule for Avigilon's forthcomming motion on invalidity.  It also goes so far to request that the Court enter an order to show cause as to why it should not grant a motion to dismiss based on invalidity.  Avigilon's cacophonic tone does little to advance their arguments.  Putting aside these observations, the Court will consider Avigilon's objections in turn below.

IV.  The Objections

A.  Overview

As noted above, Avigilon objects to seven of the Special Master's proposed constructions.  The claim terms, Avigilon's most recent proposed construction and the Special Master's construction are as follows:[3]

---

[3]The Court has listed the claim terms in the order they appear in Exhibit A but will address them in a slightly different order.

| Claim Term | Avigilon's Construction | Special Master's Construction |
|---|---|---|
| **video server**<br><br>'566 claims 1 and 28<br><br>'964 claim 1 | A server that is the source of a digital video signal on the network. | A server that receives analog or digital video signals from one or more sources, and delivers digital video signals over a network. |
| **validate**<br><br>'566 claims 1 and 28 | approve or not approve each camera or server individually, based on the particular device's licensed status | approve or not approve |
| **verify access to**<br><br>'566 claim 29 | approve or not approve each camera or server individually, based on the particular device's licensed status | approve or not approve access to |
| **camera data uniquely identifying**<br><br>'566 claim 29 | camera data permanently distinguishing the cameras | camera data distinguishing the cameras |
| **determining that access to the video server is authorized**<br><br>'964 claim 1 | approve or not approve each camera or server individually based on the particular device's licensed status | determining that access to the video server is approved or not approved |
| **determining if the computer program is authorized to access**<br><br>'964 claim 4 | approve or not approve each camera or server individually based on the particular device's licensed status | determining if the computer program is approved or not approved to access |
| **hardware device**<br><br>'964 claim 4 | the image source hardware device | an image source hardware device |

B. Claim Terms

1. "video server"

This claim term consumed most of the parties' and Special Master's efforts. The Special Master aptly observed a primary reason for the trouble is due to the fact that the patents in suit were filed in 2000 when commercial video cameras and associated equipment were moving from analog to digital technology. Also complicating the construction was that defendants initially proposed a joint construction. Then, following the Initial R&R, Exacq maintained that the joint construction was still appropriate. Avigilon abandoned the joint construction and offered a new construction. Further, the Special Master changed his recommended construction in the Supp. R&R. The Initial R&R proposed a construction of video server that contained a qualifier "other than a networked file server" because the parties' informal comments to the draft R&R indicated they agreed that a "networked file server" was not a "video server." The Special Master removed the qualifier after considering JDS's objection to the Initial R&R in the Supp. R&R because of sufficient ambiguity in the patent as to what a "networked file server" such that it is not appropriate to be included in the construction of "video server." JDS agrees with the construction in the Supp. R&R.

Avigilon presents the same arguments considered and rejected by the Special Master in advocating for a construction of "video server" which is limited to servers described in the specification. Avigilon says that the "video server" must be "the" image source or the original sources of the digital video. The Special Master rejected this notion, explaining:

7

> Although that is correct for "**video server** 26" (which converts analog image data from multiple camera 24 to digital image data) it is not correct for the other disclosed cameras 24 'that comprise camera server 38 which include both a **video server** and camera in a single integrated unit."

(Supp R&R at p. 24, emphasis in original, citations omitted). As explained in the patent "camera servers" include both a video server and a camera. See '566 Patent at 5:12-19. Avigilon's proposed inclusion of "**the** source" does not capture the camera server because in the camera server, it is the camera, not the video server, which is the original source of the digital data. Under Avigilon's construction, the device described as a "video server" would not in fact be a "video server" because it is not the original sources of the digital data. In other words, it would exclude a embodiment expressly described in the patent.

The Special Master went on to explain that Avigilon's proposed construction is part of its effort to exclude systems having digital cameras (which are an original source of digital video data and prevalent in the industry) from the scope of claims calling for 'video servers' or 'hardware devices.'" (Supp. R&R at p. 24, n.7.) The Special Master concludes his detailed analysis of Avigilon's argument as follows:

> I find nothing in the intrinsic evidence that precludes "video server" from covering any server that "receives analog or digital video signals from one or more sources, and delivers digital video signals on a network," irrespective of how the product is labeled, and irrespective of whether it is the original source of digital video signals or only an intermediate source.

(Supp. R&R at 27). The Court agrees. The Special Master's construction is adopted.

8

2. "camera data uniquely identifying"

The Special Master recommends the term "camera data uniquely identifying" be interpreted to mean "camera data distinguishing the cameras" whereas Avigilon says the word "permanently" should be inserted after "camera data" so as to read: "camera data permanently distinguishing the cameras." Avigilon contends that because in the term "data uniquely identifying" appears in claim 1 and claim 29 of the '566 patent, the term must be interpreted the same. Avigilon also says that because the Special Master recommends that "sever data uniquely identifying" in claim 1 be interpreted to mean "server data permanently distinguishing" the word "permanently" should also appear in the construction of "camera data uniquely identifying." Avigilon further says that the Special Master's construction renders claim 29 overbroad and invalid and is inconsistent with arguments JDS advanced in the defending against Exacq's invalidity motion.

The Special Master noted that the term "data uniquely identifying" is used in both claim 1 and claim 29 of the '566 patent but concluded that it is used <u>differently</u> in each claim. In claim 1, the term is associated with "<u>server</u> data" and in claim 29 is it associated with "<u>camera</u> data." The Special Master explained that "[d]istinctly different purposes for the data are specified in the two claims: in claim 1, <u>validation</u> is achieved 'using the server data,' whereas in claim 29 the "camera data" is sued to '<u>attempt access</u>' to the cameras over the network." (Doc. 73, Supp. R&R at p. 55, emphasis in original). As such, the Special Master concluded that differing constructions were appropriate given the context of the claim as a whole.

The Court agrees with the Special Master that the root term "data uniquely identifying" is used differently in claim 1 (server data) and claim 29 (camera data) and

may therefore be interpreted differently. While the general rule is that where the same terms appear in different claims they should be given the same meaning, there is an exception, applicable here, where "it is clear from the specification and prosecution history[4] that the terms have different meanings at different portions of the claims." <u>Fin Controls Sys. Pty. Ltd. v. OAM, Inc.</u>, 265 F.3d 1311, 1318 (Fed. Cir. 2001). A comparison of the language in claim 1 and claim 29 is displayed in the following chart.

| Claim 1 | Claim 29 |
| --- | --- |
| [c1] "said program being operable upon execution by the computer to access **server data uniquely identifying** each video server and to attempt access to the video servers over the network," | [c1] "said program being operable upon execution by the computer to access **camera data uniquely identifying** the cameras and ***to attempt access*** to the cameras over the network ***using the camera data***;" |
| [e] "where said program is further operable ***to validate*** the hardware addresses received from the video servers ***using the server data***" | [d] "wherein said program is further operable to ***verify access*** to those ones of the cameras that are accessible over the network" |

Plainly, the focus in claim 1 is on "server data" and its purpose and use (validation) whereas in claim 29 the focus is on "camera data" and its purpose and use (attempt access). The specification also highlights the differences. The specification discloses that the "validation" function of claim 1 requires that the "server data uniquely identifying" be "unique to each camera and server," such as provided by MAC addresses (6:43-51). The unique and permanent nature of the date required for

---

[4]In its response to Avigilon's objections, JDS outlines the prosecution history of claim 1 and claim 29 including amendments to overcome rejection which further support giving the claim terms different constructions. <u>See</u> Doc. 76 at p. 20-21.

10

"validation" "enables the software to be licensed on a per-camera or per-server basis" (6:54-55). Because of the disclosure of MAC addresses - which the parties agree are permanent - in the validation process of claim 1, the Special Master recommended the construction of "sever data uniquely identifying" in claim to include the term "permanent."

As to claim 29, on the other hand, the specification discloses that the "attempt access" function of the "camera data uniquely identifying" in claim 29 is a preliminary, pre-validation, step that uses a camera's unique but **non-permanent IP address.** (6:45-46; 7:7-9; Fig. 224). As the Special Master explained in his Initial R&R:

> [I]t should be understood that an IP address (Internet Protocol address) is an address assigned to a device's current location on a computer network. It does not travel with the device to a different network location. If a different device is substituted at a given network location, the substituted device will have the unchanged IP address for that location. [...] Thus, an IP address of a device is changeable, based on its location, and cannot function as a permanent and unique identifier for the device itself.

(Doc. 59, Initial R&R at p. 54). In other words, because the specification mentions the use of an IP address - which is not permanent - relative to the use and purpose of the "camera data" in claim 29, it would be improper to include the word "permanently" in construction. Indeed, as the Special Master and JDS point out, adding "permanently" to the construction of claim 29 would improperly remove the patent's preferred embodiment disclosed in the specification, i.e. the use of an IP address for the "access" purpose. A construction that does not include the preferred embodiment "is rarely, if ever, correct." Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1584 (Fed. Cir. 1996).

Regarding Avigilon's argument that the Special Master's construction renders the

11

claim invalid and is inconsistent with JDS's position on Exacq's invalidity motion, JDS correctly notes that Exacq's invalidity challenge under § 101 was not directed to claim 29. Moreover, the issue under § 101 was whether the patent covered patentable subject matter. JDS's position on patentability did not involve the meaning of any claimed terms.

Overall, the Court is satisfied that the Special Master's construction of "camera data uniquely identifying" to mean "camera data distinguishing the cameras" is appropriate.

3. The Licensing Terms: "validate," "verify access to," "determining that access to the video server is authorized," and "determining if the computer program is approved or not approved to access."

The Special Master recommends that "validate" in claim 1 of the '566 patent, "validating" in claim 4 of the '964 patent, and "verify access to" in claim 29 of the '566 patent be interpreted similarly and that all of these terms be constructed within the confines of "approve[/ing] or not approve[/ing]." Likewise, the Special Master recommends that the "determining ... " claim terms be construed as "determining" whether something is "approved or not approved."

Avigilon objects to the Special Master's construction of the above listed four terms, contending that all of them should be interpreted to add "*the elaboration that such approval/disapproval function must be for 'each camera or server individually, based on the particular device's licensing status.*" (Doc. 73, Supp. R&R at p. 50) (emphasis added). In other words, Avigilon seeks to inject a "licensing" requirement into claim construction by contending that all of these terms must indicate whether the claimed video server or camera server has been licensed. The "licensing" requirement

12

is necessary according to Avigilon based on arguments JDS made as to the subject matter of the invention in defending against Exacq's invalidity motion.

The Special Master dealt with this issue in the Initial R&R and Supp. R&R, both times noting that Avigilon provided no informal comments to the draft R&R advocating for a "licensing" requirement. Then, in the objections to the Initial R&R and Supp. R&R, Avigilon for the first time raised a complex argument as to licensing. Notwithstanding Avigilon's belated presentation of the issue, the Special Master twice addressed and rejected the argument Avigilon repeats here in its objections.

The Initial R&R explained the licensing issue in detail, which need not be repeated here. See Doc. 59 at pp. 41-46. Briefly, Exacq's motion to dismiss contended that the asserted patent claims are invalid under 35 U.S.C. § 101 because they are directed to an abstract idea (monitoring images from multiple video cameras from a single location) coupled with a conventional computing step (using the MAC addresses as part of the licensing process). JDS opposed the motion, contending that the claims are not invalid as directed to an abstract idea, but are instead directed to a system that prevents access to cameras or servers that are not licensed. JDS referred to the feature as "Decentralized MAC Licensing." The Court accepted JDS's arguments and denied Exacq's motion:

> As explained throughout the writings in this case, the paradigm claim (claim 1 of the '566 Patent) is directed to a specific process in which a user interface program obtains the MAC addresses of peripheral devices and uses them to enable or disable the display of video. This specific process "enables the software [on another device] to be licensed on a per-camera or per-server basis and can be used to prevent access to any cameras or servers for which the user is not licensed." (Doc. 1-6, '566 Patent at 6:54-56.). Paradigm claim 1 of the '566 patent identifies and claims a process that uses a "hardware address obtained from an accessible video server" to validate whether to permit particular software

13

on a computer to display an image from that server. This specific process was
not done before. This claimed process also provides an efficient solution to
software licensing – to avoid the problem associated with piracy – within
particular computer network environments unique to video surveillance systems.
The claims describe an improvement in computer technology. As such, the JDS
patents are not directed to an abstract idea.

(Doc. 49, Memorandum and Order, at p.15-16).  Avigilon says that based on JDS's arguments and the Court's decision, the disputed claim language must be interpreted to include the identifiers' purpose, namely, "to indicate whether it [i.e., the claimed video server or camera] has been licensed."  The Special Master rejected this notion:

> I know of no requirement of claiming (and Defendants cite no authority) that the purpose or field of use of the claimed subject matter must be included in the claim. The fact that a purpose is mentioned in the specification is insufficient justification. "We do not read limitations from the specification into claims; we do not redefine words" (Thorner, supra, at 1366).
> It is therefore my recommendation that none of the five disputed claim terms need "to indicate whether it [i.e., the claimed video server or camera] has been licensed."

(Doc. 59 at p. 46).

There is no reason to add a "licensing" requirement to any of these terms based on JDS's invalidity arguments and the Court's decision.  JDS does not dispute that the claimed invention, as stated in the specification, "enables the software to be licensed on a per-camera or per-server basis and can be used to prevent access to any cameras or servers for which the user is not licensed" (6:54-56).  JDS's invalidity position was that the claimed invention is directed to a technological solution tied to computer technology, and therefore is not merely directed to abstract subject matter.  In its invalidity briefing, JDS pointed out to the Court that:

> Claim 1 of the '566 Patent was amended to add the de-centralized MAC licensing solution . . . . The subject matter of these amendments shows that the scope of the Claim 1 (as well as certain other claims of the patents-in-suit) includes the

14

de-centralized MAC *licensing* advancement addressed in JDS's response brief. (Doc. 28 at p. 4-5, referring to attached prosecution history, Ex. 3 at JDS 38 (emphasis added)). The cited amendments to Claim 1 explicitly added to the claim the means or steps that achieved the licensing advancement over the prior art, e.g., "said program also being operable to obtain from each of the accessible video servers a hardware address stored in the video," and the program being "further operable to validate the hardware address received from the video servers using the server data . . . ." The claim, as amended, thus satisfied the Patent Office that it "particularly point[ed] out and distinctly claim[ed]" the subject matter that patentably distinguished over the prior art, as required by 35 U.S.C. §112(b). The claim language also satisfied the Court that the claimed subject matter was not merely directed to an abstract idea.

JDS's position in claim construction is that the claim language is unambiguous and should not be restricted to a specific form of enablement, i.e. "licensing." As the Special Master aptly stated, "JDS'[s] earlier position related to patentability of the claimed invention as a whole; it did not involve the meaning of any claim term." (Doc. 59, Initial R&R at p. 46).

Overall, the Court finds that the Special Master is correct in rejecting Avigilon's argument to insert "licensing" into the claim terms.

### 4. hardware device

Avigilon makes a similar argument in advocating for a construction of "hardware device. Avigilon says that the term should be interpreted to mean "**the** image source hardware device," as opposed to the Special Master's proposed construction of "**an**

15

image source hardware device." Some background as to the evolution of this construction is in order. Avigilon and Exacq first jointly proposed that the term "hardware device" mean "video server or camera," contending that the specification does not support broadening the term beyond a video server or camera. JDS said no construction was necessary. The Special Master initially recommended that the term be interpreted to mean "image source hardware device" because the only hardware devices disclosed in the specification are devices that are image sources, which includes a video server or camera. Avigilon did not object to the Special Master's construction. In the Supplemental R&R, the Special Master recommended a slight edit - the addition of the article "an" before "image source hardware device." The Special Master explained that "[t]he purpose of this revision is to clarify that 'hardware device' applies to <u>any</u> image source, not just to the ultimate or original source of an image." (Supp. R&R at p. 76).

Avigilon now objects to this construction. JDS does not. Like its position on "video server" discussed above, Avigilon seeks to insert "the" before "image source hardware device." As with the term "video server," this is an attempt to limit "hardware device" to in an original source. For the same reasons that "video server" should not be limited, so should "hardware device" not be limited. The Special Master's construction is adopted.

V. Conclusion

For the reasons stated above, Avigilon's objections are overruled. The Supplemental Report and Recommendation of Special Master on Patent Claim Construction (Doc. 73) is ADOPTED as the findings and conclusions of the Court.

SO ORDERED.

		S/Avern Cohn
		AVERN COHN
		UNITED STATES DISTRICT JUDGE

Dated: 4/9/2018
	Detroit, Michigan